[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAR 20, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-14619
Non-Argument Calendar
_____

D. C. Docket No. 06-60750-CV-JIC

WILLIE C. SMITH,

Plaintiff-Appellant,

versus

MARY ANNE BELLE,
et al.,

Defendants,

DEPUTY ARMANDO ENRIQUE,
BRIAN MCDONALD,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(March 20, 2009)**

Before BLACK, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Willie C. Smith, a Florida prisoner proceeding pro se, appeals from the district court's final judgment dismissing his pro se civil rights action, which was brought pursuant to 42 U.S.C. §§ 1983, 1985, and 1986. For the reasons set forth below, we affirm.

## I.

On May 26, 2006, Smith filed his original pro se civil rights complaint, pursuant to § 1983. Smith sued the following six defendants: 1) Mary Anne Belle, a state prosecutor; 2) Armando Enrique, Deputy Sheriff with the Broward County Sheriff's Department ("BCSD"); 3) Kenneth Jenne, Sheriff of the BCSD; 4) Mary Anne Letterieri, Deputy Sheriff Detective with the BCSD; 5) Brian McDonald, Deputy Sheriff Detective with the BCSD; and 6) Deputy Persac, Deputy Sheriff with BCSD.

Smith alleged that McDonald and Letterieri violated Smith's rights "when they filed a false complaint affidavit on October 27, 2000, which stated that Mr. Smith kept an individual named Cynthia Stokell confined in a cage at his residence." Smith alleged that he was subsequently tried in connection with that offense but, at his trial, both McDonald and Letterieri testified that they had no

knowledge of Stokell being confined in a cage. According to Smith, this led to his acquittal for that offense on May 2, 2002. Smith alleged that: 1) Enrique violated his rights by committing perjury at Smith's trial in order to support the false affidavit filed by McDonald and Letterieri; 2) Belle violated his rights by prosecuting Smith on the basis of the false affidavit when she knew that the affidavit was false; 3) Jenne violated his rights by "allowing a[n] agency wide policy of his law enforcement personnel to file false police reports and complaint affidavits . . . ."; and 4) Persac violated his rights "when he physically assaulted Mr. Smith at the jail after Mr. Smith's arrest on the basis of the falsified complaint affidavit" by throwing him "into the wall of a holding cell where his head made contact with a concrete block wall . . . ."

After the district court granted Smith's motion to proceed in forma pauperis ("IFP"), a magistrate judge instructed Smith to amend his complaint to provide "written documentation showing the date he gave [the] Complaint to prison authorities for filing" and "the date that Persac allegedly injured him . . . ." In accordance with the magistrate's instructions, Smith filed an amended complaint. In addition to re-alleging his claims, Smith attached a copy of the front page of his original complaint, which confirmed that he filed it with prison authorities on April 25, 2006. He also attached a grievance that he had filed against Persac, which

3

clarified that the alleged incident occurred on August 9, 2001.

The magistrate issued a report recommending, <u>inter alia,</u> that Smith's claim against Persac be dismissed for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B)(ii). Specifically, the magistrate found that Smith's claim against Persac was governed by Florida's four-year statute of limitations and, because the alleged incident occurred on August 9, 2001, Smith's complaint – which was deemed filed on April 25, 2006, under the mailbox rule – was untimely. Overruling Smith's objections, the district court adopted the magistrate's report and dismissed the claim against Persac.

Because Smith was granted permission to proceed IFP, the magistrate then ordered the U.S. Marshal to serve a copy of Smith's complaint on the remaining defendants. The U.S. Marshal reported back that he was unable to serve Letterieri because she was "not in [the] BSO system or is no longer working there." As a result, the magistrate ordered Smith to "supply the Court with a current address for defendant Letterieri or risk dismissal of this defendant from the case." The record does not show that Smith ever responded to this order.

Belle then filed a motion to dismiss Smith's amended complaint, arguing that Smith failed to state a claim against her and that she was entitled to prosecutorial and qualified immunity. The magistrate issued a report

4

recommending that Smith's claim against Belle be dismissed on prosecutorial immunity grounds. Specifically, the magistrate found that Belle was entitled to absolute immunity because Smith's allegations related only to her decision to prosecute Smith. The district court overruled Smith's objections, agreed with the magistrate's reasoning, and dismissed Smith's claims against Belle.

With the court's permission, Smith filed a second amended complaint against the same defendants, with the addition of Sgt. Owens, a correctional supervisor at the Broward County Jail. Smith set forth the following factual allegations. On October 27, 2000, Enrique, McDonald, and Letterieri unlawfully entered and searched Smith's residence in response to a 911 call where Smith reported his elderly father missing. The officers observed Stokell in another room of the house, and, after questioning her, they placed Smith under arrest. Smith alleged that McDonald coercively interrogated him without reading him his rights and denied him the right to an attorney. Although Smith was released from custody on bond, he was re-arrested on February 9, 2001, and had his bond revoked. Smith then posted bond on July 14, 2001, but he alleged that the supervising jail official, Sgt. Owens, refused to release him. On August 9, 2001, he alleged, Persac assaulted him. Smith reiterated that Belle had engaged in prosecutorial misconduct by knowingly relying on fabricated evidence. Smith also

5

alleged that Enrique, McDonald, and Letterieri committed perjury during his trial. Finally, Smith alleged that Jenne deliberately failed to prevent BCSD officers from engaging in official misconduct.

Smith brought 30 causes of action, alleging 15 violations of federal law and 15 corresponding violations of Florida law. Of Smith's 15 federal claims, 14 were brought pursuant to § 1983, alleging violations of the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments.[1] Smith's remaining federal claim was a conspiracy claim, brought pursuant to §§ 1985 and 1986. In this latter claim, he alleged that the defendants, "for ulterior motives of personal benefit," conspired to deprive him of constitutionally protected rights, privileges, and immunities. Attached to his complaint were two news articles demonstrating that a detective at BCSD had pled guilty to corruption charges and that Jenne was under investigation for corruption.

The magistrate issued a report recommending that the court dismiss all of Smith's claims except for two. First, the magistrate clarified that Smith had not raised any new claims against Belle and Persac, who already had been dismissed from the action. With respect to Enrique, the magistrate recommended that all of

_____

[1] In his claim against Jenne, Smith also referenced the Americans with Disabilities Act ("ADA"). Although it is unclear how Smith's allegations against Jenne implicate the ADA, Smith has abandoned any such claim on appeal. See Horsley v. Feldt, 304 F.3d 1125, 1128, 1131 n.1 (11th Cir. 2001).

Smith's unlawful search claims be dismissed as untimely under Florida's four-year statute of limitations. In addition, the magistrate found that Smith's perjury claims against Enrique did not state a claim. With respect to McDonald, the magistrate similarly recommended that Smith's unlawful search, seizure, and interrogation claims be dismissed as untimely under Florida's four-year statute of limitations, and that his perjury claim be dismissed for failure to state a claim. With respect to Jenne, the magistrate recommended that Smith's claims be dismissed as untimely under Florida's four-year statute of limitations, as "the gravamen of this claim is that Jenne's action or inactions were the cause of the allegedly false police reports filed in October, 2000." With respect to Owens, the magistrate recommended that Smith's claim be dismissed as untimely because the factual basis of the claim allegedly occurred in 2001. With respect to Letterieri, the magistrate recommended that Smith's claim be dismissed for lack of prosecution under Fed.R.Civ.P. 4(m) because she was not served with the complaint within 120 days. Finally, the magistrate recommended dismissing any remaining claims not specifically addressed, including Smith's §§ 1985 and 1986 claim. However, the magistrate recommended that Smith be entitled to proceed on the second amended complaint "only to the extent that it provides factual support for his malicious prosecution claims against Enrique and McDonald."

7

Overruling Smith's objections, the district court adopted the magistrate's report and set Smith's malicious prosecution claims for trial. The court added, inter alia, that it was dismissing Smith's §§ 1985 and 1986 claim because it was "conclusory."

Before trial, Smith filed a motion for appointment of counsel, arguing that the court should appoint him counsel because he could not afford counsel, he had made repeated efforts to secure counsel, his claims were sufficiently meritorious, and the legal issues were complex. Smith filed an affidavit in support of his motion where he asserted, inter alia, that he was unable to articulate his claims because he suffered from "severe health issues" – ranging from dizziness, high blood pressure, blurred vision, and recurring head pain – as a result of Persac's assault on him.

The district court denied Smith's motion for appointment of counsel. It found that, under the caselaw in this Circuit, prisoners pursuing a § 1983 action are entitled to appointed counsel only where there are "exceptional circumstances." The court determined that Smith's case did not present exceptional circumstances because the "essential merits of [his] malicious prosecution claim are not complicated." The court also found that Smith had not sufficiently shown that his medical condition required appointment of counsel, as "the incident allegedly

leading to mental impairment occurred seven years ago in 2001."

The court presided over a one-day jury trial, where Smith proceeded pro se. After Smith presented his case, the district court granted Enrique's and McDonald's motion for judgment as a matter of law under Fed.R.Civ.P. 50. The court explained that the malicious prosecution claims against Enrique and McDonald "were based upon [Smith's] allegation that they signed an affidavit alleging [Smith] kept victim Cynthia Stokell in a cage but then stated at his criminal trial they had no knowledge of that conduct." Smith called Enrique, McDonald, and Belle as witnesses at the trial and, based on their testimony, the court concluded that judgment as a matter of law was appropriate because: 1) while Belle testified that she relied on investigators' reports, there was no evidence that she relied on the reports prepared by Enrique and McDonald, as there were other investigators involved in the case; and 2) while Enrique and McDonald testified that they did not see Stokell being abused, they did testify that they "saw deplorable living conditions at Plaintiff's residence where it appeared someone was living." Because the court had adversely resolved all of Smith's claims, it entered a final judgment against Smith. This appeal followed.

**II.**

**A.  Claims against Enrique and McDonald**

"Pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed."  Boxer X v. Harris, 437 F.3d 1107, 1110 (11th Cir. 2006) (quotation omitted).  Nonetheless, "even in the case of pro se litigants this leniency does not give a court license to serve as de facto counsel for a party . . . ."  GJR Investments, Inc. v. County of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998).  As a result, arguments not raised on appeal by pro se litigants are deemed abandoned.  See Horsley v. Feldt, 304 F.3d 1125, 1128, 1131 n.1 (11th Cir. 2001).

Despite liberally construing Smith's brief, Smith does not assert that the court erred by dismissing his claims against Enrique and McDonald.  Furthermore, nothing in Smith's brief could be liberally construed as an attack on the court's reasons for granting Enrique and McDonald judgment as a matter of law on Smith's malicious prosecution claims.  Accordingly, Smith has abandoned these claims on appeal.  See Horsley, 304 F.3d at 1131 n.1.

**B.  Remaining Claims**

Where a prisoner is proceeding IFP, the district court "shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a

claim on which relief may be granted . . . ."  28 U.S.C. § 1915(e)(2)(B)(ii).

Because § 1915(e)(2)(B)(ii) "tracks the language of Federal Rule of Civil

Procedure 12(b)(6)," this Court "appl[ies] 12(b)(6) standards in reviewing

dismissals under section 1915(e)."  Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th

Cir. 1997).  As a result, this Court reviews de novo the district court's dismissal of

a complaint for failure to state a claim under § 1915(e)(2)(B)(ii), viewing the

allegations in the complaint as true.  Id.

Persac

In this case, Smith asserts on appeal – albeit in one sentence, and without

citing any legal authority – that the court erred by dismissing his claims against

Persac as untimely.  The Supreme Court has directed that the state statute of

limitations period applicable to personal injury actions should be applied to all

actions brought under § 1983.  Wilson v. Garcia, 471 U.S. 261, 276, 280, 105 S.Ct.

1938, 1947, 1949, 85 L.Ed.2d 254 (1985), superceded by statute as recognized in,

Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 382, 124 S.Ct. 1836, 1845, 158

L.Ed.2d 645 (2004).  "[W]here state law provides for multiple statutes of

limitations for personal injury actions, courts considering § 1983 claims should

borrow the general or residual statute for personal injury actions."  Owens v.

Okure, 488 U.S. 235, 249-50, 109 S.Ct. 573, 582, 102 L.Ed.2d 594 (1989).  Florida

11

is a state with multiple statutes of limitations for personal injury actions, and Florida's residual limitations period is four years. Fla. Stat. § 95.11(3)(p).

In this case, under the mailbox rule, Smith's original complaint was deemed filed when he delivered it to prison officials on April 25, 2006. See Garvey v. Vaughn, 993 F.2d 776, 783 (11th Cir. 1993). Smith alleged that the incident with Persac occurred on August 9, 2001. Thus, the district court correctly concluded that Smith's claims against Persac were untimely because he did not file his complaint within the applicable four-year statute of limitations period.

Jenne and Owens

In his brief, Smith also asserts, though without any explanation, that the court erred by dismissing his claims against Jenne and Owens. Smith's claims against Jenne were based on Jenne's alleged, deliberate failure to supervise the actions of his subordinates in 2000 and, therefore, Smith's claims against Jenne were untimely for the same reason as his claims against Persac. Smith's claims against Owens were based on Owens' failure to release Smith from prison in 2001 and, therefore, Smith's claims against Owens were untimely as well. Accordingly, the district court did not err by dismissing Smith's claims against these defendants.

Belle

In his amended complaint, Smith alleged that Belle violated his rights

12

because she knew that the allegations against Smith were false, but nonetheless decided to prosecute him. Because this allegation only implicates actions taken by Belle while she was performing her function as an advocate for the government, and there is no allegation that she was acting outside the jurisdiction of her office, the district court correctly found that she was entitled to absolute immunity. See Riviera v. Leal, 359 F.3d 1350, 1353 (11th Cir. 2004) ("A prosecutor is entitled to absolute immunity for all actions he takes while performing his function as an advocate for the government," including "the initiation and pursuit of criminal prosecution . . . ."); Elder v. Athens-Clarke County, Ga. Through O'Looney, 54 F.3d 694, 695 (11th Cir. 1995) ("A prosecutor's decision to bring charges against a person, so long as the prosecutor is acting within the scope and territorial jurisdiction of his office, is immune from an action for damages under § 1983.").

Letterieri

The district court correctly dismissed Smith's claims against Letterieri for lack of service of process under Rule 4(m). Because Smith was proceeding IFP, the magistrate properly ordered the U.S. Marshal to serve the defendants with Smith's complaint. See 28 U.S.C. § 1915(d). However, the U.S. Marshal was unable to serve Letterieri, and the magistrate instructed Smith to provide a current address so that Letterieri could be served, warning that his failure to do so would

result in dismissal. However, Smith ignored this warning, despite his obligation to comply. See Laurence v. Wall, 551 F.3d 92, 94 (1st Cir. 2008) ("The IFP plaintiff is, however, required to cooperate with the court and the United States Marshal in effectuating service, including providing the addresses of the named defendants . . . ."). Thus, the district court did not err by dismissing Smith's claims against Letterieri.

Conspiracy

On appeal, Smith does not challenge the district court's dismissal of his conspiracy claim brought under §§ 1985 and 1986, but rather, reiterates that Jenne and the other defendants were generally corrupt. As in his second amended complaint, Smith cites to news articles attached to his brief suggesting that Jenne and other officials in BCSD used their positions of power to benefit financially.

"Section 1985(3) creates a cause of action for damages against conspiracies which deprive persons of the equal protection of law or other federal rights, privileges or immunities." Arnold v. Board of Educ. of Escambia County Ala., 880 F.2d 305, 317 (11th Cir. 1989), overruled on other grounds by, Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). "Section 1986 provides a cause of action against anyone who has 'knowledge that any of the wrongs conspired to be done,

14

and mentioned in section 1985 of this title, are about to be committed, and having the power to prevent or aid in preventing the commission of the same, neglects or refuses so to do.'"  Park v. City of Atlanta, 120 F.3d 1157, 1159 (11th Cir. 1997) (quoting 42 U.S.C. § 1986).  To state a claim for relief under § 1985(3), a plaintiff must establish that there was "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." Griffin v. Breckenridge, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971).

In this case, Smith did not allege in his second amended complaint that the defendants were motivated by any racial or other class-based discriminatory animus.  Nor does Smith make any such allegation on appeal.  Instead, he has alleged throughout that the defendants conspired against him in order to benefit financially.  For this reason, the district court did not err by dismissing Smith's § 1985 claim.  Almon v. Sandlin, 603 F.2d 503, 505 (5th Cir. 1979) ("Insofar as Almon predicated his action upon 42 U.S.C. §§ 1985 and 1986, he failed to state a claim upon which relief could be granted because he did not allege that the conspirators were motivated by any racial, or otherwise class-based, invidiously discriminatory intent.").  Furthermore, the district court correctly found Smith's conspiracy claim to be conclusory, and dismissal was appropriate for this reason as well. Kearson v. Southern Bell Tel. & Tel. Co., 763 F.2d 405, 407 (11th Cir.

15

1985) (concluding that the district court properly dismissed the plaintiff's § 1985 claim because it was based on conclusory allegations). And because Smith's § 1986 was dependent on his § 1985 conspiracy claim, the court was correct to dismiss that claim as well. See Park, 120 F.3d at 1159-60 ("Section 1986 claims are . . . derivative of § 1985 violations).

## C.    Appointment of Counsel

"A civil litigant, including a prisoner pursuing a section 1983 action, has no absolute constitutional right to the appointment of counsel. The appointment of counsel is instead a privilege that is justified only by exceptional circumstances . . . ." Poole v. Lambert, 819 F.2d 1025, 1028 (11th Cir. 1987). "[W]hether such circumstances exist is . . . committed to district court discretion." Steele v. Shah, 87 F.3d 1266, 1271 (11th Cir. 1996). Exceptional circumstances exist "where the facts and legal issues are so novel or complex as to require the assistance of a trained practitioner." Poole, 819 F.2d at 1028. "The key is whether the pro se litigant needs help in presenting the essential merits of his or her position to the court. Where the facts and issues are simple, he or she usually will not need such help." Kilgo v. Ricks, 983 F.2d 189, 193 (11th Cir. 1993).

On appeal, Smith points out that the district court declined to appoint him counsel, arguing that his head injury, caused by Persac's assault, impaired him

from presenting his case. Smith is correct that any mental impairment would likely be a relevant consideration in determining whether counsel should have been appointed. See, e.g., Kilgo, 983 F.2 at 194 (noting that a pro se litigant's "psychiatric history" would be relevant). However, the district court correctly found that Smith did not sufficiently demonstrate such an impairment, as his alleged head injury occurred back in 2001, which was seven years earlier. In this respect, an examination of Smith's filings throughout the litigation reveals that, while he was not schooled in the law, he was able to present adequately the "essential merits" of his position to the district court. See Kilgo, 983 F.2d at 193; see also Fowler v. Jones, 899 F.2d 1088, 1096 (11th Cir. 1990) (relying on, inter alia, the quality of the plaintiff's pleadings to conclude that he "was capable of representing himself adequately"). Furthermore, and perhaps most importantly, Smith's case did not present any novel or complex issues of fact or law so as to require the appointment of counsel. See Dean v. Barber, 951 F.2d 1210, 1216 (11th Cir. 1992) ("We cannot say the issues in this case are so novel or complex that the district court abused its discretion in declining to appoint counsel."). Accordingly, the district court did not abuse its discretion by declining to appoint Smith counsel.

## III.

In sum, Smith has abandoned his claims against Enrique and McDonald, the district court properly dismissed his remaining claims, and the district court did not abuse its discretion by declining to appoint Smith counsel.[2] Accordingly, we affirm the district court's final judgment against Smith.

**AFFIRMED.**

---

[2] We also conclude without discussion that the other miscellaneous allegations in Smith's brief are without merit.